# Exhibit A



1201 Louisiana Street, Suite 600
Houston, TX 77002
713.292.0863

540 Madison Avenue, 25th Floor
New York, NY 10022
212.388.5020

www.intrepidfp.com

Mr. Antonio Fernandez
610 E 7th Street
Houston, Texas 77007

July 24, 2018

Dear Tony,

Intrepid Financial Partners, L.L.C. (the "**Company**") is very pleased to offer you the position of Managing Director, reporting directly to the Members of the Company with an anticipated start date of September 24, 2018, or otherwise agreed upon. Your responsibilities will be those periodically described to you and consistent with that of a Managing Director at a financial services firm.

As a full-time, salaried employee you will receive an annual salary of $█████, subject to tax and other withholdings as required by law. Such salary may be adjusted from time to time in the sole discretion of the Company and will be paid in substantially equal instalments and pro-rated for the partial year in accordance with the standard payroll practices of the Company. This is an exempt position and you are not eligible for over-time. You are eligible to receive total compensation with a target not less than $█████ for calendar year 2018, less any salary earned at your current employer for calendar year 2017; provided, however, that the Company reserves complete discretion to determine whether any discretionary bonus will be paid and, if paid, the amount and timing of such bonus payment.

In addition to your salary, at the Company's sole discretion, you may be eligible to participate in the Company's long-term profit sharing plan that will entitle you to share in a portion of the future profits of the Company, if any. The terms and conditions of any such profit sharing plan will be determined in the Company's sole discretion and communicated to you under separate cover.

The Company will also pay you an additional "make-whole bonus" to replace the deferred bonus you forfeited, if any, on termination of your current employment. The make-whole bonus amount will be equal to ████████████████████████████, plus ████████████████████ ████████████. The ████████████ will be calculated using ████████████████ ████████████. The make-whole bonus will also include an additional $████ related to ████████████. Such make-whole bonus will be paid on the following schedule: ████ ████████████████████████████████████████████████████████████. Such make-whole bonus will be paid at the time your discretionary bonus is paid, and is subject to you providing a copy of the applicable bonus statements/award letters. If your employment terminates with the company prior to the applicable payment date, then you will forfeit the right to any remaining make-whole bonus.

You will be entitled to 20 days of paid time-off per calendar year, in accordance with Company policies as are in effect from time to time. You will be entitled to receive health, dental and other benefits in connection with your employment with the Company, subject to and in accordance with applicable plan documents. These plans may be amended or terminated at the Company's sole discretion. You will be subject to all applicable employment and other policies of the Company.

The Company may, at its sole discretion, terminate your employment by giving you not less than three months prior written notice of such termination. You may terminate your employment by giving the Company three months prior written notice of such termination. In either event, the Company may elect, at its sole discretion, to waive or reduce the notice period. During your notice period, the Company may elect to place you on paid leave for any or all of the notice period.

This letter, along with the attached Non-Competition and Confidentiality Agreement, set forth the terms of your employment with the Company and supersede any prior representations or agreements whether written or oral.

In addition to accepting the terms and conditions set forth above, by accepting this offer:

- You agree to devote your full business time, attention and best efforts to the performance of your duties and to the furtherance of the Company's interests.

- You represent that you are not bound by any employment contract, restrictive covenant or other restriction preventing you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with the terms of this letter.

- You represent that you will not remove or take any documents, proprietary data or material of any kind, electronic or otherwise, with you from your current or former employer without written authorization from your current or former employer.

- You agree to provide to the Company, within three days of your hire date, documentation of your eligibility to work in the United States, as required by the Immigration Reform and Control Act of 1986.

- You agree that this offer of employment as well as your continued employment is subject to and conditioned on your successful completion of drug screening, satisfactory background check and compliance with any applicable securities industry licensing and regulatory requirements.

If you agree with and accept the terms of this offer of employment, please sign below and return this letter to me. If not accepted, this offer shall expire in one week, but please contact us if you need more time to make a decision. We are pleased to have you join our team, and we look forward to our success together.

2

I look forward to hearing from you.

Yours sincerely,

Intrepid Financial Partners, L.L.C.

*[signature: Christoph F. Winchenbaugh]*

_____
Christopher F. Winchenbaugh, Member

I accept this offer of employment on the terms and conditions set forth above.

*[signature]*

_____
Antonio Fernandez

Date: 7/24/18

3



1201 Louisiana Street, Suite 600
Houston, TX 77002
713.292.0863

540 Madison Avenue, 25th Floor
New York, NY 10022
212.388.5020

www.intrepidfp.com

## NON-COMPETITION AND CONFIDENTIALITY AGREEMENT

**THIS AGREEMENT** (the "Agreement"), is made and entered into as of July 24, 2018 by and between Intrepid Financial Partners, L.L.C., a Delaware limited liability company (the "Company"), and Antonio Fernandez (the "Executive").

### Recitals

**WHEREAS**, the Company has made an offer of employment to the Executive, subject to and conditioned on execution of this Agreement; and

**WHEREAS**, the Executive will receive substantial economic payments and benefits as a result of his employment with the Company; and

**WHEREAS**, in his capacity as a Managing Director of the Company, the Executive will have access to the Company's business activities, goodwill, business plans, personnel and other confidential and proprietary information including, but not limited to, existing and potential customers, customer information, target market areas, strategies, methods, techniques and other information of and about the Company, all of which are of great value to the Company and which are not generally known and are confidential; and

**WHEREAS**, the Executive, in consideration of the Company's offer of employment, as set forth in the Offer letter of the date hereof, accepts the terms and conditions set forth in this Agreement.

### Agreement

**NOW, THEREFORE**, in consideration of the above referenced recitals and the mutual covenants and promises therein and herein contained and the substantial benefits provided under the Offer Letter, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, it is hereby agreed by and between the parties as follows:

1. **Term**. This Agreement shall commence upon Executive's employment with the Company.

2. **Unique Position of Trust.**
(a) Executive acknowledges that he will render services to the Company that are of a special and unusual character, with a unique value to the Company. Executive also acknowledges that he will hold a position of trust in which he has had and will have broad access to all of the Company's most sensitive Confidential Information (as defined below).

(b) For purposes of this Agreement, "Company" shall mean Intrepid Financial Partners, L.L.C. and, any other business entity that is either controlled by, controls, or is under common control with Intrepid Financial Partners, L.L.C.

(c) For purposes of this Agreement, "Confidential Information" means all non-public information of and about the Company, including without limitation, business activities, business plans, strategies, legal affairs, organizational and personnel matters, existing and potential customers, customer information, contracts and agreements with customers, strategies, pending and proposed acquisitions, intellectual property, trade secrets, operational and hiring matters, personnel policies,

market studies and forecasts, competitive analyses, regardless of the form in which such information is stored. "Confidential Information" shall also include any Confidential Information of any client, investor, corporate partner, or joint venturer of the Company, or any other third party that the Company is required by agreement to keep confidential. "Confidential Information" shall not, however, include information that the Executive can demonstrate (a) has become publicly known through no act of the Executive, (b) has been rightfully received by the Executive from a third party not subject to any confidentiality agreement concerning such information or (c) has been independently developed by the Executive without use of or reliance on Confidential Information or any violation of his obligations under this Agreement. If a particular portion or aspect of Confidential Information becomes subject to any of the foregoing exceptions, all other portions or aspects of such information shall remain subject to all of the provisions of this Agreement.

3. **Protection of Company Confidential Information.**
(a) The Executive shall not, while an employee of the Company, or following termination of his employment, directly or indirectly, use, disclose or permit to be known, other than (i) as is reasonably required in the regular course of his duties on behalf of the Company, including disclosures to the Company's advisors and consultants, (ii) as required by law (in which case the Executive shall give the Company prior written notice of such required disclosure, unless said notice to the Company is prohibited by judicial order) or (iii) with the prior written consent of the Company's Chief Executive Officer, to any person, firm or corporation any Confidential Information.

(b) The Executive shall not remove from the Company's premises, or make any copies of, Confidential Information, except as necessary to perform or use in the course of legitimate Company business. The Executive agrees to return to the Company all Confidential Information and Company property, including all copies of it, in his possession or under his control, (i) at any time upon the request of the Company, and (ii) without such a request at the termination of his employment by the Company. Upon the Company's request, the Executive will furnish a written statement that he has returned all Confidential Information and property to the Company.

(c) Executive and Company agree that this Agreement does not limit his/her ability to communicate with the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local governmental agency or commission or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to the Company.

4. **Non-Competition and Non-Solicitation.**
(a) In view of the unique value to the Company of the services of the Executive, because of the Confidential Information of the Company entrusted to or obtained by the Executive, and as a material inducement to the Company to enter into the Offer Letter with Executive, pursuant to which the Executive will receive significant benefits, the Executive covenants and agrees that he shall not (i) in the event that his termination is either for Cause or his voluntary resignation, then for six (6) months from the Termination Date (which shall be the date of termination of employment, following the Notice Period) or (ii) in the event his termination is without Cause

2

then for the Notice Period, if any (such applicable time period in clauses (i) or (ii) shall be the "Restricted Period"), directly or indirectly, whether as an owner, partner, executive, director, consultant, contractor, advisor, agent, employee, guarantor, surety or otherwise, or through any person, consult with or in any way aid or assist any person to engage or attempt to engage in any employment, consulting or other activity which directly or indirectly competes with the current business of the Company or business under development by the Company (the "Restricted Field"). The "Notice Period" shall be the period of time as set forth in the Executive's offer letter with the Company to the extent not otherwise waived by the Company in its sole discretion. The Restricted Field includes, but is not limited to, any business enterprise that is engaged, or owns or controls a significant entity that is engaged in any place in the world in (i) investment banking or securities activities or financial services, including, without limitation, private equity, hedge fund or other asset management business, or (ii) any business activities in which the Company and/or its affiliates are engaged primarily or in any substantial manner. The Executive acknowledges that his participation in the conduct of any such business or activity alone or with any person other than the Company will materially impair the business and prospects of the Company and the goodwill of the Company.

(b) In the event that Executive's termination is either for Cause or his voluntary resignation, then for six (6) months from the Termination Date (which shall be the date of termination of employment, following the Notice Period) or (ii) in the event his termination is without Cause, then for six (6) months from the Executive's Termination Date, the Executive shall not, directly or indirectly, on behalf of any party or person other than the Company, solicit (or assist or provide information in connection therewith) any then-customer of the Company or prospective customer of the Company to provide any product, service, or business that is competitive with or substantially similar to any product, service, or business then offered or planned to be offered by the Company, or to induce such then-customer or prospective customer to reduce or diminish the volume or level of their business with the Company.

(c) In the event that Executive's termination is either for Cause or his voluntary resignation, then for six (6) months from the Termination Date (which shall be the date of termination of employment, following the Notice Period) or (ii) in the event his termination is without Cause, then for six (6) months from the Executive's Termination Date, the Executive shall not, directly or indirectly, on behalf of any party or person other than the Company, solicit or induce (or assist or provide information in connection therewith) any then-current employee, or person who was an employee or officer of the Company within the previous six-month period, to leave the employ of the Company.

(d) For purposes of this Agreement, "Cause" shall mean the Company's determination that the Executive has (i) breached any material agreement with Company or materially violated any Code of Conduct or written policy of the Company, (ii) been convicted, indicted or entered a plea of guilty or *nolo contendere* to any felony, (iii) willfully and continually failed to perform his duties, (iv) engaged in willful misconduct that resulted in material harm to the Company or (iv) knowingly violated any securities laws or regulations.

(e) Nothing herein shall preclude the Executive from beneficially owning no more than two percent (2%) of the total outstanding stock of a class of stock registered under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

5. **Reasonableness.** Executive acknowledges and agrees the foregoing non-competition and non-solicitation provisions are necessary and reasonable, and that it has been made clear to the Executive that the Executive's compliance with Sections 3 and 4 of this Agreement is a material condition to the Company's offer of employment, and subsequent employment of the Executive pursuant to the Offer Letter. The Executive further acknowledges and agrees that, if the Executive breaches Sections 3 and 4 of this Agreement, the restricted periods set forth therein shall be tolled during the time of such breach.

6. **Remedies.** In the event of an actual breach by the Executive of the provisions of Sections 3 and 4 of this Agreement, the Company shall be entitled to terminate the Executive's employment for cause and suspend any payments and provision of benefits that the Executive may be entitled to pursuant to the Offer Letter or otherwise, including the payment of any deferred compensation, bonus or other incentive compensation (whether vested or unvested), and to entry of an injunction restraining the Executive from such breach without any obligation to post a bond and without proving special damages or irreparable injury and the Executive acknowledges and agrees that any such breach or threatened breach will cause irreparable injury to the Company and that money damages will not provide an adequate remedy to the Company. Nothing herein, however, shall be construed as prohibiting the Company from pursuing any other remedies available to the Company for such breach or threatened breach. In the event of any action by the Company to enforce this Agreement, the non-prevailing party shall be responsible for paying the reasonable attorneys' fees and expenses, including paralegal fees of the prevailing party. If the Executive violates any of the covenants contained in Sections 3 and 4 of this Agreement the terms and the covenants violated shall be automatically extended to a like period of time from the date on which the Executive ceases such violation or from the date of entry by a court of competent jurisdiction of any order or judgment enforcing such covenant, whichever period is later. To the extent permitted under applicable law and without limiting the right to terminate payments herein, the Company may suspend any payments or benefits that the Executive may be entitled to pursuant to the Offer letter or otherwise for the duration of any period in which the Company reasonably determines that the Executive is in breach hereof. The provisions of Sections 3, 4, and 5 and this Section 6 shall survive the termination of this Agreement.

7. **Notices.** Any notice or other communication in connection with this Agreement shall be delivered to the other party either via overnight mail or certified mail.

8. **Waiver of Breach**. The waiver by either party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by the other party.

9. **Entire Agreement; Amendment.** The recitals hereto are hereby incorporated herein by this reference. This Agreement, together with the Offer Letter attached hereto, constitute the entire agreement between the parties hereto with regard to the subject matter hereof and thereof, superseding all prior understandings and agreements, whether written or oral.

10. **Non-Exclusivity of Rights**. Except as otherwise expressly provided herein, nothing in this Agreement shall prevent or limit the Executive's continuing or future participation in any benefit, deferred compensation, bonus, incentive or other plan or program provided by the Company and for which the Executive may qualify, nor shall anything herein limit or reduce such rights as the Executive may have under any other agreements with the Company Amounts which are vested benefits or which the Executive is otherwise entitled to receive under any plan or program of the

Company shall be payable in accordance with such plan or program, except as explicitly modified by this Agreement.

11. **Interpretation**. The parties agree and acknowledge that this Agreement shall be deemed drafted equally by both of the parties. Its language shall be construed as a whole and according to its fair meaning. Any presumption or principle that the language shall be construed against any party shall not apply.

12. **Effect of Headings.** The titles of section headings herein contained have been provided solely for convenience of reference and in no way define, limit or describe the scope or substance of any provision of this Agreement.

13. **Severability**. The provisions of this Agreement are severable, and the invalidity of any provision shall not affect the validity of any other provision. In the event that any court of competent jurisdiction shall determine that any provision of this Agreement or the application thereof is unenforceable because of the duration or scope thereof, the parties hereto agree that said court in making such determination shall have the power to reduce the duration and scope of such provision to the extent necessary to make it enforceable, and that the Agreement in its reduced form shall be valid and enforceable to the full extent permitted by law.

14. **Arbitration**. Subject to the provisions of Section 6 hereof, any dispute, controversy or claim between Executive and the Company arising out of or relating to or concerning the provisions of this Agreement, or any agreement between Executive and the Company relating to or arising out of Executive's employment with the Company or otherwise concerning any rights, obligations or other aspects of Executive's employment relationship in respect of the Company ("Employment Related Matters"), shall be finally settled by arbitration in New York City before, and in accordance with the rules of the New York Stock Exchange ("NYSE") or, if the NYSE declines to arbitrate the matter, the American Arbitration Association (the "AAA") in accordance with the commercial arbitration rules of the AAA.

15. **Governing Law/Jurisdiction**. This Agreement shall be binding upon the Executive and shall inure to the benefit of the Company and its successors and interest and assigns, and shall be construed in accordance with and governed by the laws of the State of New York without regard to conflicts of laws. Notwithstanding the provisions of Section 14, and in addition to its right to submit any dispute or controversy to arbitration, the parties hereto intend and hereby confer jurisdiction to enforce the covenants contained herein upon the state and federal courts sitting in the City of New York. This includes any suit, action of proceeding to compel arbitration. In the event that such courts, or an arbitrator, shall hold any such covenant wholly unenforceable by reason of the breadth of scope or otherwise, it is the intention of the parties hereto that such determination not bar or in any way affect the Company's right to the relief provided above in the courts of any other states within the geographical scope of such other covenants having appropriate personal and subject matter jurisdiction over the parties, as to breaches of such covenants in such other respective jurisdictions, the above covenants as they relate to each state being, for this purpose, severable into diverse and independent covenants.

16. **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

[remainder of page intentionally left blank]

5

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as a binding contract as of the date first written above.

Intrepid Financial Partners, L.L.C.

_____
Christopher F. Winchenbaugh
Member

_____
Antonio Fernandez

Date: 7/24/18

6