# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTREPID FINANCIAL PARTNERS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>ANTONIO C. FERNANDEZ,<br><br>        Defendant. | Civil Action No.: 1:20-cv-09779-LTS |

## DECLARATION OF ANTONIO C. FERNANDEZ

I, ANTONIO C. FERNANDEZ, declare under penalty of perjury as follows:

1.    I reside in Houston, Texas with my wife and four children, all of whom are under the age of 9. I have personal knowledge of the facts stated below, unless stated on information and belief. I submit this Declaration in connection with the motion (brought by order to show cause) of plaintiff Intrepid Financial Partners, LLC ("Intrepid") to obtain a temporary restraining order and a preliminary injunction.

2.    I am a Petroleum Engineer by training, having earned my degree from Texas A&M University in December 2008. Petroleum Engineers work in the oil and gas industry, a sector of our economy that is in the midst of a historic contraction in activity. US rig count is currently sitting at 310 rigs, down from the 2011 high of 2,026 operating rigs (an 85% decrease). Upon information and belief, unemployment in my profession is high and the recent covid-19 related macroeconomic issues only compound this issue.

3.    I am currently employed at Intrepid Financial Partners ("Intrepid") as Managing Director, Head of Acquisitions & Divestitures ("Managing Director"). I work out of Intrepid's

office in Houston, Texas.  Most of the clients I service are located in Texas, with a few clients in Oklahoma and Colorado.  I do not service any clients in New York.

4. Prior to joining Intrepid, I worked at two other investment banks.  I was an Executive Director at JPMorgan in their Technical Transaction Team from April 2016 to September 2018.  Before that, I held a similar role at Jefferies LLC.

### The Negotiations Leading Up To and my Employment with Intrepid

5. Intrepid reached out to me about the potential to work at their firm while I was still employed at JPMorgan.  I had numerous conversations with Mr. Winchenbaugh, the Co-Founder, President and Chief Operating Officer of Intrepid, before accepting my offer.  During these conversations, I was concerned about multiple parts of the proposed agreement, including the unpaid nature of the six-month non-compete provision, and attempted to stress test the negotiability of this provision.  I had been subject to other restrictive covenants in connection with my prior employment in investment banking but none contained a three-month notice provision and a six-month non-compete provision.  More importantly, none required any period of unpaid "sitting on the sidelines" whatsoever, let alone a six-month period.

6. On or about July 24, 2018, I received an offer letter and a Non-Competition and Confidentiality Agreement with Intrepid (collectively the "Agreement").  A copy of the Agreement is attached as Ex. 6 to the Memorandum of Law in Opposition to Plaintiff's Motion.

7. The following day, Mr. Winchenbaugh contacted me inquiring as to the status of my signing, at which time I reiterated my concern about the non-compete. I told him that "I'm trying to get comfortable around the onerous combination of a 3 month notice period + 6 month non-compete."  A copy of the 7/25/18 email between myself and Mr. Winchenbaugh is attached as Ex. B to Mr. Winchenbaugh's Declaration. In response, Mr. Winchenbaugh offered a phone

2

call, and during that phone call he became very agitated and encouraged me to sign the agreement claiming everyone that joins Intrepid has to sign it as is. He also stated that I should not worry because Intrepid had never enforced these provisions with regard to any of its employees. He then made other Intrepid Managing Directors aware of my hesitation and encouraged those Managing Directors to employ similar tactics in getting me to sign.

8. I began employment with Intrepid on October 1, 2018. I have held the title of Managing Director during my entire employment with Intrepid. I do not have any equity or other ownership interest in Intrepid, nor am I a "C-Suite" executive.

9. I work in the upstream energy sector, where energy companies buy and sell natural reserves of oil and gas around the world. In the energy industry, this area is generally called "Acquisitions and Divestitures. ("A&D"). A&D is not unique to Intrepid or to the energy sector. Upon information and belief, most industries have A&D in one form or another.

10. Most energy firms, including Intrepid, do not hide the A&D work they have performed for clients. In fact, they typically broadcast the results of these deals publically in what's known as "Case Studies" as this helps to establish a firm's credibility in the marketplace. Further, industry trade publications routinely report on A&D transactions. Thus, any industry casual observer can ascertain who Intrepid's clients are and who a competitor's clients are.

11. Part of Intrepid's A&D team duties also include involvement in restructuring deals. To the extent that the restructuring deals involve a bankruptcy process, any A&D activity is open to the public. In those circumstances, much of the work that is performed on behalf of the client is available to the public.

12. Mr. Winchenbaugh's claim that working in A&D is a unique skillset is misleading. Upon information and belief, Intrepid is currently looking for my replacement and intends to

replace me with a junior level engineer. With regard to my future employment with Citigroup, Inc. ("Citi"), I was hired to fill a vacancy.

**Intrepid's Decision to Change the Business Model on Which I Was Compensated**

13. At the end of 2019, Intrepid did not provide me with a bonus to adequately compensate for the work performed in 2019. Specifically, Intrepid reduced my anticipated bonus by approximately 67% even though my professional review and feedback was overwhelmingly positive.

14. Despite the fact that the A&D team had recently become established and was gaining traction in the market, Mr. Winchenbaugh informed me that the bonus was low because "we are all economic animals and have to live with the revenue that we bring in, big or small" or words to that effect.

15. Essentially, Intrepid changed the business model I was hired to execute and the metrics by which I was to be compensated. Originally I was hired with the understanding that my role was to assist the coverage team with technical insights and support the current client base. But beginning in 2020, Mr. Winchenbaugh said that my bonus would be paid solely based upon the A&D-specific revenues created. In other words, the A&D team was now burdened with sourcing its own clients/deals and effectively having its own Profit/Loss Statement because it ultimately had to pay for itself. Given the historic lows in A&D activity in our industry, I would have never agreed to such an arrangement and therefore voiced my objection.

16. The unexpected and substantial decrease in compensation at the end of 2019 materially impacted my family's finances at a time when my family was still in the process of repairing our home due to significant damage as a result of Hurricane Harvey. We had also recently lost a vehicle during the floods of Tropical Storm Imelda in September 2019 and had to

procure a new one. Those unforeseen but necessary expenses depleted my family's savings. Continued cash flow is therefore of paramount importance to my family given our lack of savings.

### My Resignation from Intrepid

17. On or about September 2, 2020, I contacted Mr. Winchenbaugh to provide my notice of resignation. I also provided Intrepid with written notice of my resignation. A copy of that resignation is attached as Exhibit C to Mr. Winchenbaugh's Declaration.

18. During that conversation with Mr. Winchenbaugh, I advised him that one of the primary reasons I was leaving was due to the low bonus that I had received in 2019, but that it was not the only reason. I also told him that based on the fact that my compensation would be tied strictly to A&D revenue and the end of the historical low in the energy A&D market was nowhere in sight, I was concerned about my 2020 bonus and therefore my family's financial future. Mr. Winchenbaugh asked about my future employment plans. I told him that I intended to continue my career as an investment banker but had not finalized a deal with an investment bank as I wanted to have a timeline discussion with Intrepid so I could be mindful of Intrepid's transition needs before committing to any start date with a new employer.

19. Shortly thereafter, I attempted to discuss my exit from Intrepid with Mr. Winchenbaugh on multiple occasions. He refused each and every time. Mr. Winchenbaugh indicated that I should continue to think about my decision and give Intrepid an opportunity to provide a proposal with regard to my bonus for 2020.

20. On September 21, 2020, I had a videoconference with Mr. McGee and Mr. Winchenbaugh. I stated that I still intended to resign. Nonetheless, they refused to discuss anything with regard to my departure stating that Intrepid would do this on its own timeline.

21. Because Intrepid had repeatedly refused to discuss the timing of my departure with me, I retained counsel in the hopes that Intrepid would engage in a dialogue. Intrepid, however, refused to do so.

22. I did not tell Messrs. McGee and Winchenbaugh the name of my future employer at that September 21 videoconference because Citi had asked that I keep the information confidential. As an A&D professional, I take confidentiality seriously and I wanted to respect Citi's request.

23. At no time have I breached the restrictive covenants set forth in the Agreement nor do I intend to do so. I intend to abide by my obligations just as I have done with regard to the restrictive covenants from my prior employers.

24. On or about November 13, 2020, more than one news service reported that Citi had hired me and Mr. Willis. Contrary to the assertions in Mr. Winchenbaugh's Declaration, I did not solicit Robert Willis to join Citi. I have not and will not solicit any Intrepid employees to join Citi.

25. I have not and will not solicit any of Intrepid's clients to join Citi.

26. I have not and will not disclose any confidential information or trade secrets to Citi.

27. Several other Intrepid employees have left within the past year to work for competitors under Intrepid's definition of "Restricted Field." Upon information and belief, these other employees' agreements contained the same restrictive covenants that my Agreement contains. At no time did Intrepid attempt to enforce these provisions against these other individuals, which is consistent with what Mr. Winchenbaugh told me prior to joining Intrepid.

28. I have complied with Intrepid's three-month notice period. During this time I have continued to service Intrepid's clients and transition all pending matters to the appropriate Intrepid employees.

29.     If I am enjoined from beginning employment with Citi on or about December 3, 2020, after my three-month notice period with Intrepid expires, it will cause significant harm to my family and its financial future.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 22, 2020.

_____
Antonio C. Fernandez
