UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

INTREPID FINANCIAL PARTNERS, LLC,

        Plaintiff,

  -v-                                                                         No.  20 CV 9779-LTS

ANTONIO C. FERNANDEZ,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Intrepid Financial Partners, LLC ("Intrepid" or the "Plaintiff") commenced this action on November 20, 2020, against its then-employee Defendant Antonio Fernandez ("Mr. Fernandez" or the "Defendant"), seeking a temporary restraining order ("TRO") and preliminary injunctive relief in aid of adjudication by a Financial Industry Regulatory Authority ("FINRA") arbitration panel of Intrepid's contract claims resulting from Mr. Fernandez's imminent departure from Intrepid to work with another company.  In the arbitration proceeding, and in this Court pending completion of the arbitration proceedings, Plaintiff seeks to enforce the post-employment non-competition, non-solicitation and confidentiality provisions of Mr. Fernandez's employment agreement with Intrepid (the "Agreement") and prevent him from engaging in what Plaintiff contends is competitive employment at Citigroup, Inc. ("Citi") following his departure from Intrepid.  (See docket entry no. 1.)  Plaintiff's original complaint alleged that the Court had diversity jurisdiction of the action pursuant to 28 U.S.C. section 1332.  At the first hearing on Plaintiff's TRO application, Plaintiff conceded that there was no diversity but represented that it would promptly amend its

complaint as of right to assert a federal claim under the Defend Trade Secrets Act, such that the Court could exercise supplemental jurisdiction of Plaintiff's contract-based claims. The Court directed the parties to meet and confer on, inter alia, a proposed schedule for expedited discovery and preliminary injunction motion practice, and set November 30, 2020, as the date for a hearing on Plaintiff's TRO application. On the morning of November 30, 2020, immediately before the commencement of the second hearing, Plaintiff filed an amended complaint against Mr. Fernandez, asserting federal subject matter jurisdiction of a new claim under the Defend Trade Secrets Act, 18 U.S.C. section 1836 (the "DTSA"), and supplemental jurisdiction of its common law claims under 28 U.S.C. section 1367(a). (See docket entry no. 31, the "AC".)

    The Court proceeded to hear oral argument on the Plaintiff's application for a TRO, during which the Defendant contested the Court's authority to rule on Plaintiff's application due to a lack of both personal jurisdiction over Mr. Fernandez and subject matter jurisdiction of the case under the DTSA. (See docket entry no. 35.) After hearing brief oral argument on the jurisdictional disputes, the Court held that Fernandez had failed to demonstrate that the contractual forum selection clause should not be enforced and, as to subject matter jurisdiction, found that, "on its face the [newly filed amended] complaint appears to assert a claim under the Defend Trade Secrets Act sufficient to establish at [the TRO] stage the existence of federal subject matter jurisdiction." (See docket entry no. 35.) The Court then heard oral argument on the merits of Plaintiff's TRO application, and granted Plaintiff's application for a temporary restraining order against Mr. Fernandez, which expires on December 30, 2020, at the latest and Plaintiff's request for expedited discovery, and set a briefing and hearing schedule for Plaintiff's preliminary injunction motion. (See docket entry nos. 32 and 35.)

On December 12, 2020, the Plaintiff filed a motion for preliminary injunction in aid of arbitration.  (See docket entry no. 43.)  On December 14, 2020, Defendant filed its opposition to the motion for a preliminary injunction, as well as a motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) to dismiss the AC. (See docket entry nos. 67 and 62, respectively.)  On December 16, 2020, the Plaintiff filed its reply in further support of its motion for a preliminary injunction.  (See docket entry no. 80.)  On December 18, 2020, the Court heard oral argument on Plaintiff's motion for a preliminary injunction and set an expedited briefing schedule on Defendant's motion to dismiss the AC.  (See docket entry no. 101.)  On December 21, 2020, the Plaintiff filed its opposition to the Defendant's motion to dismiss.  (See docket entry no. 91, the "MTD Opp.")  Defendant filed reply papers in further support of its motion to dismiss on December 23, 2020.  (See docket entry no. 97.)  The Court has considered all of the parties' submissions in connection with their respective motions.  For the following reasons, the Defendant's motion to dismiss the AC is granted insofar as the Court finds that Plaintiff has failed to state a claim for relief under the DTSA and the Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims, and the Plaintiff's motion for a preliminary injunction is, consequently, denied for lack of jurisdiction.

DISCUSSION

The Defendant seeks an order dismissing the AC pursuant to Rule 12(b)(1), arguing that Plaintiff's failure to proffer facts establishing the elements of its DTSA claim deprives the Court of jurisdiction to entertain that claim such that there is no basis for the exercise of jurisdiction of any of Plaintiff's state law contract claims, and under Rule 12(b)(6) for failure to state a DTSA claim upon which relief can be granted.  Because failure to state a viable federal claim would also point to dismissal of the state law contract claims pursuant to 28 U.S.C. section 1367(c) and it is at best questionable that the statutory elements of a DTSA claim are

jurisdictional,[1] the Court will address the motion as one under Rule 12(b)(6) to the extent it is directed to the DTSA claim.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face" and sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A proper complaint cannot simply proffer legal conclusions or threadbare recitals of the elements of a cause of action; the plaintiff must plead specific facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

To sustain a claim under the DTSA, which creates a federal cause of action for the misappropriation of trade secrets used in interstate commerce, a plaintiff must establish "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 510 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). Here, the Defendant argues that Intrepid has not plead a claim under the DTSA because the AC fails to: 1) sufficiently identify purported trade secrets; 2) sufficiently

---

[1] See Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006) (Holding, in context of Title VII's definition of covered employer, that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

allege that Mr. Fernandez acquired, used, or disclosed purported trade secrets; and 3) allege that Mr. Fernandez used allegedly misappropriated trade secrets in interstate commerce.

First, the Defendant contends the AC fails to meet the minimum pleading requirements because it only claims general categories of information and data as trade secrets, and does not adequately put Mr. Fernandez on sufficient notice of the contours of Plaintiff's claim for misappropriation.  A trade secret is defined under the DTSA as "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if (a) "the owner thereof has taken reasonable measures to keep such information secret;" and (b) "the information derives independent economic value . . . from not being generally known . . . [or] readily ascertainable . . . [to] another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(A)-(B).

As to improper use of such information by Mr. Fernandez, the AC alleges that: "Mr. Fernandez misappropriated, and continues to misappropriate, Intrepid's confidential information and trade secrets by directly or indirectly disclosing and using them to solicit Intrepid's customers throughout the United States, while knowing or having reason to know that the confidential information and trade secrets were acquired through improper means, under circumstances giving rise to his duty to Intrepid (both contractually and under common law) to maintain their secrecy or limit their use." (Id. at ¶ 86); "Mr. Fernandez misappropriated and acquired Intrepid's confidential information and trade secrets through improper means, including: (a) obtaining and disclosing confidential information and trade secrets in violation of the Agreement; (b) receiving and using the confidential information and trade secrets for his personal benefit or his future employer's benefit, while knowing, or having reason to know, that

such information had been acquired by unlawful or improper means; (c) receiving and using the confidential information and trade secrets for his personal benefit or his future employer's benefit while knowing, or having reason to know, that such information was acquired under circumstances giving rise to a duty to maintain the secrecy of the confidential information and trade secrets or limit the use of the confidential information and trade secrets; or (d) retaining knowledge of and inevitably disclosing or using Intrepid's confidential, trade secret information in the course of his future competitive activities." (Id. at ¶ 87); "Mr. Fernandez intentionally misappropriated the confidential information and trade secrets and directly or indirectly continues to use or acquiesces in others using the confidential information and trade secrets to solicit Intrepid's clients away from Intrepid and to his future employer." (Id. at ¶ 88).

Intrepid's AC alleges that Mr. Fernandez has had access to confidential information and trade secrets comprising information regarding its clients, their histories, plans and preferences, and Intrepid's own business information and plans.  A customer contact list that required substantial time, effort and money to compile may be deemed a trade secret where it contains information that is not readily available, for example where such a list contains individual customer preferences, reflects a specialized knowledge of the customer's operations and needs, or contains information "which could only be achieved through personal solicitation[.]"  N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 46 (2d Cir. 1999) (internal quotation marks and citations omitted).  To the extent a plaintiff seeks trade secret protection for a compilation of otherwise publicly available information, the plaintiff must demonstrate a "unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."  Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2d Cir. 1990) (internal quotation marks and citation

omitted).  Courts have found that information may qualify as a trade secret where the plaintiff has undertaken reasonable measures to protect and "cloak[ the alleged secrets] with a substantial element of secrecy."  Zalta, 280 F. Supp. 3d at 518  (internal quotation marks and citation omitted) (finding Plaintiff was not entitled to the protection of the DTSA because, although it took some care to limit the public exposure of its purported trade secrets, it regularly disclosed its alleged secrets to software licensees without notifying them of the information's confidential nature or binding them to confidentiality agreements.)

Here, Intrepid argues that it has sufficiently identified in the AC categories of trade secrets Mr. Fernandez allegedly misappropriated or continues to misappropriate, as including:

> information relating to current and prospective clients, including client lists, client history (including pricing and investment history), service documents detailing client points of contact, budgets, accounts receivable history, customized pricing and investment models used by Intrepid, client service and operation strategies, marketing strategies and techniques, detailed service and investment models, and pricing information.

See MTD Opp. at 10 (citing AC at ¶¶ 74, 80).  Plaintiff alleges that such trade secrets are the product of Intrepid's investment in identifying clients, cultivating relationships with those clients and negotiating and providing services to those clients.  AC at ¶ 75.  As a result, the AC asserts that Intrepid's trade secrets, which are not generally known or readily ascertainable by another person without a significant expenditure of time, expense and effort, provide Intrepid with invaluable, independent economic value.  AC at ¶¶ 75, 80.  The Defendant, on the other hand, characterizes Plaintiff's allegations identifying purported trade secrets as vague references to information pertaining to clients with which Intrepid has worked hard to develop relationships, ordinary business documents, and marketing strategies and techniques.  The Defendant submits that Intrepid's allegations that such information is not readily ascertainable are conclusory, and

that Intrepid fails to plead the existence of its trade secrets with the requisite specificity.  Having considered carefully the content of the AC and with the benefit of full briefing on the motion to dismiss, the Court concurs with Defendant's assessment.

While a trade secret claimant need not "disclose every detail of an alleged trade secret in a complaint, the pleading standard set forth in <u>Twombly</u> and <u>Iqbal</u> requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret[.]"  <u>Universal Processing LLC v. Weile Zhuang</u>, No. 1:17-CV-10210-LTS, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018).  Here, Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords Intrepid economic value such that it should be deemed a trade secret.  For example, with respect to its lists of confidential information containing allegedly unique client information, Intrepid does not plead any specific facts demonstrating that Intrepid has such unique customer preference information or has specialized knowledge of customers' operations or needs that is organized or used in a way that is unique to Intrepid.  Instead, Plaintiff focuses on emphasizing the "confidential" and "highly sensitive" nature of the information it seeks to protect, without providing specific insight into or context for its confidentiality designations.  <u>See</u>, <u>e.g.,</u> AC at ¶ 4 ("Mr. Fernandez is privy to Intrepid's highly sensitive, confidential information . . . including customer information, business strategies, target markets and pricing formulae"); AC at ¶ 36 ("Mr. Fernandez has access to highly confidential and proprietary information concerning every aspect of Intrepid's A&D business line, its employees, customers and business strategy and Intrepid's operations, business activities, target markets, products, pricing formulae and business

strategy."); AC at ¶ 38 ("In advance of [quarterly] meetings [with Intrepid's leadership personnel], Mr. Fernandez both prepared and was provided with written business plans and other materials marked 'Confidential' that contained detailed information concerning the activities and performance of every Intrepid business line, the various projects that Intrepid's business lines were involved in, and detailed information concerning Intrepid's assets and investments."); AC at ¶ 42 ("Intrepid's confidential and proprietary business information is not available to the public, is of great value to Intrepid, and would give any of its competitors who acquired such information an unfair competitive advantage."). Indeed, the AC "conflates the concept of a 'trade secret' with 'confidential information.' These are not one and the same—trade secrets are a subset of confidential information" and alleging their existence "requires much more specificity as to the information owned by the claimant." Elsevier Inc., 2018 WL 557906, at *6.

Further, Plaintiff claims that it has trade secrets in the form of information concerning: "active client transactions"; Intrepid's "current and prospective clients, including client lists, [ ] client history . . . client pitch information, client service and operation strategies, marketing strategies and techniques, and detailed service and investment models."; and "detailed pricing and investment history with each of [Intrepid's] clients." AC at ¶¶ 4, 39, 74, 80. However, general and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function, how Intrepid derives value from them, or what Intrepid specifically does to ensure their secrecy. See Elsevier Inc. v. Doctor Evidence, LLC, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (Holding that "[a]lleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue . . . does not give rise to a

plausible allegation of a trade secret's existence.") (internal quotation marks and citation omitted) (emphasis in original). The AC lacks sufficient factual information to plead plausibly the existence of trade secrets protected by the DTSA, as opposed to the general proposition that there is a broad range of confidential information that is valuable to Intrepid, that all of its employees are obliged to keep confidential, and that would provide a commercial advantage to competitors.

Moreover, Intrepid's DTSA claim must be dismissed for failure to allege facts demonstrating plausibly that Mr. Fernandez misappropriated any trade secrets. "Misappropriation" under the DTSA is defined to include "disclosure or use of a trade secret of another without express or implied consent[.]" AUA Private Equity Partners, LLC v. Soto, 1:17-CV-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (internal quotation marks omitted). Intrepid alleges that Mr. Fernandez misappropriated its trade secrets "by directly or indirectly disclosing and using them to solicit Intrepid's customers throughout the United States" including by "continu[ing] to use or acquiesc[ing] in others using the confidential information and trade secrets to solicit Intrepid's clients away from Intrepid and to his future employer." AC at ¶¶ 86, 88. However, the AC is in this respect as well entirely devoid of any specific factual allegations supporting Intrepid's allegation of wrongdoing by Mr. Fernandez. Plaintiff's conclusory allegations and threadbare recitals of the elements of a claim for misappropriation under the DTSA are insufficient to survive a Rule 12(b)(6) motion to dismiss. See Kairam v. W. Side GI, LLC, 793 F.App'x 23, 28 (2d Cir. 2019) (holding that where complaint lacked, in part, any allegation about the circumstances surrounding the alleged misappropriation, the DTSA claim was properly dismissed); Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 381 (S.D.N.Y. 2020) (finding defendant's allegations that plaintiff stole defendant's sourcing

network information, forwarded documents to his personal email and disseminated them, modified other documents owned by defendant for plaintiff's own use, and attempted to execute business transactions using the defendant's trade secrets were sufficient to plausibly state a claim for misappropriation). For these reasons, the Court finds that the Plaintiff has failed to state a claim under the DTSA and will decline in accordance with 28 U.S.C. section 1367(c)(3) to exercise supplemental jurisdiction of the remainder of the claims asserted in the AC. Plaintiff's motion for a preliminary injunction is denied for lack of jurisdiction of relevant viable claims, and the TRO is hereby dissolved.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the AC is granted. Count Three, asserting a claim under the Defend Trade Secrets Act, is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court declines, pursuant to 28 U.S.C. section 1367(c)(3), to exercise supplemental jurisdiction of the remainder of Plaintiff's claims. Plaintiff's motion for a preliminary injunction is denied, and the TRO issued on November 30, 2020 (docket entry no. 32), is dissolved.

The Clerk of Court is respectfully directed to terminate docket entry nos. 43 and 62, enter judgment dismissing Count Three of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and declining to exercise supplemental jurisdiction of Plaintiff's remaining claims, and close this case.

SO ORDERED.

Dated: New York, New York
December 30, 2020

>__/s/ Laura Taylor Swain_____
>LAURA TAYLOR SWAIN
>United States District Judge